UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPERANZA ARREGUIN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　　Defendant. | No. 1:19-cv-01532-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF** |

**I.　　Introduction**

Plaintiff Esperanza Arreguin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 15 and 19. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Accordingly, Plaintiff's appeal is denied.

**II.　　Procedural Background**

On December 15, 2015 Plaintiff filed an application for supplemental security income claiming disability beginning December 30, 2014. AR 183–92. Plaintiff claimed degenerative disc, carpal tunnel, and frozen left shoulder. AR 212. The Commissioner denied the application initially on June 16, 2016, and on reconsideration on September 9, 2016. AR 79, 93.

Plaintiff requested a hearing, which was held before Administrative Law Judge Matilda Surh (the "ALJ") on May 7, 2018. AR 25. Plaintiff was represented by counsel at the hearing. AR 59. On September 11, 2018, the ALJ issued a decision denying Plaintiff's application. AR 22.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 8.

The Appeals Council denied review on July 2, 2019. AR 11. On October 28, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff, born August 4, 1968, lived with her dad. AR 60. She completed two years at Fresno State. AR 60. She previously worked as a caregiver for her mother assisting her with her dialysis bags, laundry, and meal preparation. AR 61. The heaviest weight she lifted was 10 to 15-pound boxes. AR 62. She also previously worked as a dried fruit packer at which she lifted up to 48 pounds, and also worked as a caretaker at a healthcare facility. AR 62. She stopped working as a dried fruit packer after experiencing problems with her shoulder and hand, her employer sent her to the doctor and she was placed on disability. AR 65. The doctor she saw assessed nerve damage and carpal tunnel. AR 65. Her injuries were too old for surgery to be a viable option, and her nephrotic syndrome precluded injections. AR 65. Accordingly, she did not receive treatment beyond Tylenol with Codeine for pain. AR 65. The pain medication was effective for a couple of hours, and she was awake a lot during the night with pain. AR 65.

She underwent physical therapy for her shoulder a few times, but it hurt more than it helped. AR 66. She was unable to mop, sweep, or do laundry. AR 66. On a typical day she got up at 6:30 with back pain, took a shower, made coffee and toast, and walked for 15 to 20 minutes to relieve knee stiffness. AR 67. She could not walk for more than 15 to 20 minutes before her knee and back started hurting. AR 67. She could not sit for more than 10 to 15 minutes before she had to move around. AR 67. She was able to drive. AR 67. Other than Tylenol with Codeine, she had also tried Tramadol, Gabapentin, and a few other medications, all of which made her dizzy. AR 68. She briefly was prescribed an elbow brace, which was discontinued after causing neck problems. AR 68.

She could reach out in front of her with her left arm, but reaching to the side or lifting upwards aggravated her shoulder causing popping. AR 68. She could reach something overhead, such as on top of the refrigerator, with her right arm but not her left arm. AR 69. She could shower and dress herself. AR 69. She also had problems reaching out in front of her and lifting objects,

such as a gallon of milk, with her left arm.  AR 69.  She could lift maybe 5 pounds with both hands if no reaching was required.  AR 70.

She also experienced neck pain but was not receiving treatment.  AR 70.  The severity of her neck pain and low back pain was a level 7 out of 10.  AR 70–71.  Icepacks did not help, but Biofreeze ointment helped for a little while.  AR 71.  Her back pain radiated to other parts of her body, causing leg and foot numbness.  AR 72.  She also suffered from lichen sclerosis, which she was diagnosed with in 2010.  AR 71, 73.  It prevented her from sitting for too long and was also bothersome while standing.  AR 73–74.  Clobetasol (corticosteroid) ointment was effective, but was discontinued after causing her kidneys to slow resulting in 10 pounds of water retention.  AR 72.  Other steroidal ointments caused the same reaction.  AR 72.

### B.     Medical Records

Following left arm and bilateral wrist MRIs, Plaintiff's treating physician, Dr. Cordoba, diagnosed bilateral wrist ligament tears in February 2015.  AR 284, 287, 341.  Plaintiff's orthopedist, Dr. Shantharam, diagnosed carpal tunnel in March 2016.  AR 304.  A March 2015 cervical spine MRI revealed trace disc bulges.  AR 291.  During an April 2015 appointment with Dr. Cordoba, Plaintiff complained of joint pain, limited left arm strength and mobility, and difficulty completing day to day activities.  AR 338.  A left shoulder x-ray the following month noted potential calcific tendinitis.  AR 290.

Plaintiff followed up with Dr. Shantharam and Dr. Cordoba periodically between May 2015 and October 2015 with left arm pain, left arm numbness, disc bulge in her neck, left shoulder pain, bilateral wrist pain, lower back pain, and right leg pain,  AR 303, 335, 352, 354, 357–58, 360.  A September 2015 left shoulder MRI showed calcific tendinitis and hypertrophy of the AC joint, among other clinical findings.  AR 288.

In October 2015, Dr. Shantharam diagnosed adhesive capsulitis and tendinitis in the left shoulder, noting she had no history of injury.  AR 301.  He prescribed Tylenol with Codeine.  AR 301.  Injections were discussed as a treatment option, but she could not take injections due to her nephrotic syndrome.  AR 301, 388.  On December 21, 2015, Dr. Cordoba diagnosed sciatic neuritis and osteoarthritis.  AR 314.  Plaintiff underwent physical therapy from November 2015 through

February 2016.  AR 321.  A January 2016 physical examination found reduced left shoulder strength and flexion, among other clinical findings.  AR 323.  A May 2016 lumbar spine MRI revealed disc bulge, among other clinical findings.  AR 374–75.  During two visits with Dr. Cordoba in June 2016, Plaintiff's back was abnormal in appearance and her mobility was restricted.  AR 409, 412

### C.     Medical Opinions

Consultative examiner Dr. Van Kirk completed an orthopedic examination of Plaintiff on May 23, 2016.  Plaintiff had reduced squatting capability, slow and painful cervical spine range of motion, decreased lumbar spine flexion and extension, and decreased range of motion in her left shoulder.  AR 377–382.  Dr. Van Kirk opined that Plaintiff can stand and walk for six hours, sit without limitation, lift and carry 10 pounds frequently and 20 pounds occasionally, occasionally perform postural activities, and never work in extremely cold or damp environments.  AR 382.  Dr. Van Kirk also opined that, if Plaintiff is required to repetitively elevate her arms up to 110 degrees (just past the shoulder level), then she is limited to occasional gross manipulative activities.  AR 382.

On June 6, 2016, non-examining state agency physician Dr. Bugg reviewed Plaintiff's records and opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, stand, walk, and sit for 6 hours in an 8-hour work-day, with no postural limitations but with a limitation on left overhead reaching.  AR 88–89.  On September 6, 2016, non-examining state agency physician Dr. Khong reviewed Plaintiff's records and concurred with Dr. Bugg's assessment, while adding some postural limitations.  AR 102–04.

Dr. Cordoba provided an unsigned medical source statement opining that Plaintiff could sit for 30 minutes and stand for 20 minutes at a time up to a maximum of 2 hours each in an 8-hour working day.  AR 416.

### D.     Vocational Expert

Vocational expert Cheryl Chandler (the "VE") testified at the administrative hearing on May 7, 2018.  The ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age,

education and work history who could perform work at the light exertional level with some postural limitations, and no reaching overhead with the left/non-dominant extremity. AR 75. The VE opined that such an individual could perform Plaintiff's past work as a companion. AR 75. The VE then considered the following hypothetical posed by Plaintiff's counsel:

> If we had a hypothetical individual such as the individual in hypothetical #1, except we were to then limit – further limit that this individual would have limitations with the left, upper extremity in every other direction. We'll put that at occasional. With regard to the right, upper extremity, if we put the manipulatives as well as we'll say gross and fine at occasional as well. The stand and walk, we're going to limit that individual, we'll start with four hours. Could that hypothetical individual perform any of the claimant's past work?

AR 76. The VE responded that such an individual could not perform Plaintiff's past work or any other work. AR 76. The ALJ then posed a second hypothetical with the same limitations outlined in hypothetical one, but with the added condition that the individual would miss two days of work per month due to pain. AR 77. The VE testified that such an individual could not perform Plaintiff's past work or any other work. AR 77.

### IV. **Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security*

5

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V.  The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant

numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

**VI.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her application date of December 15, 2015.  AR 27.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, tendinopathy of the rotator cuff, and chronic kidney disease.  AR 27.   The ALJ also found that Plaintiff had the following non-severe impairments: right lateral epicondylitis, osteoarthritis of the right knee, and bilateral carpal tunnel syndrome.  AR 28.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  AR 28.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC), and concluded that Plaintiff had the RFC to perform light work as defined in 416.967(b), except that she could occasionally stoop, kneel, crouch, crawl or climb ladders, ropes, and scaffolds, and never reach overhead with her left/non-dominant upper extremity.  AR 28.

At step four, considering Plaintiff's RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a companion.  AR 32.  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Act.  AR 33.

**VII.    Issues Presented**

Plaintiff asserts three claims of error.  First, Plaintiff contends that the ALJ's RFC assessment is unsupported by substantial evidence because the ALJ failed to include all of Plaintiff's reaching limitations.  Second, Plaintiff contends that the ALJ failed to set forth clear and convincing reasons for discounting her subjective symptoms.  Third, Plaintiff contends that her case was adjudicated by an improper and unconstitutionally appointed ALJ.   Plaintiff's three claims of error will be addressed in turn.

**A.     Inclusion of Reaching Limitations in Plaintiff's RFC**

    **1.     Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### 2. **Analysis**

Here, the ALJ concluded prior to step four that Plaintiff had the residual functional capacity to perform light work with some postural limitations, and with the added limitation that Plaintiff could never reach overhead with her left arm. AR 28. Plaintiff contends that, in addition the ALJ's assessed restriction on left arm reaching *overhead*, the evidence also supported a restriction on left arm reaching to 110 degrees (just past shoulder height), a limitation which the ALJ erroneously omitted. Specifically, Plaintiff contends that "the ALJ failed to provide any rational for ignoring Dr. Van Kirk's opinion that if Plaintiff is required to elevate the left arm to 110 degrees, she is limited to occasional handling and reaching with the left upper extremity." Br. at 8, Doc. 15. The relevant portion of Dr. Van Kirk's opinion reads as follows:

> With regard to gross manipulative activities such as reaching and handling, if she is required to repetitively elevate the arms up to about 80° of abduction (for example, lifting a box and placing it on a table in front of her), there are no gross manipulative restrictions with the left upper extremity. If she is required to *repetitively elevate the arms up to about 110° on a repetitive basis*, just past the shoulder level, then she is limited to occasional gross manipulative activities.

AR 383 (emphasis added). Thus, as Defendant points out, Plaintiff mischaracterizes Dr. Van Kirk's opinion as imposing a restriction on any elevation of the left arm to 110 degrees, when Dr. Van Kirk's opinion in fact reflects a restriction on *repetitive* elevation to 110 degrees. AR 382.

Relatedly, Plaintiff contends that the ALJ improperly failed to include Dr. Khong's assessed limitation that she could never reach above her shoulder using her left arm. Br. at 8. As Defendant points out this is perhaps not a complete reading of Dr. Khong's opinion either, though his opinion is admittedly somewhat confusing. Under the manipulative limitations section for reaching in any direction, Dr. Khong stated Plaintiff had a limitation with respect to "left *overhead*" reaching, whereas in his explanation of the manipulative limitations he stated "no *above shoulder* reach using the LUE." AR 103–04 (emphasis added).

Setting aside Plaintiff's confusion as to Dr. Van Kirk's opinion (repetitive vs. non-repetitive

shoulder level reaching), and Dr. Khong's somewhat confusing assessment of both above shoulder and overhead reaching limitations, the Court need not address whether the ALJ failed to properly account for these opinions. If the ALJ did err in failing to properly account for these opinions in formulating Plaintiff's RFC, Plaintiff makes no attempt to explain how this error was harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless").

Plaintiff did not meet her burden to establish harmful error because she offers no analysis as to how her alleged inability to reach at or above shoulder level with her left arm would impact her ability to perform her *past relevant work* as a companion. Defendant notes that, per the DOT 309.677-010, the companion position entails non-repetitive reaching. Moreover, the companion position was even less demanding as performed by Plaintiff who did not identify any activities she performed as a companion that required reaching at or above shoulder level with her left arm. Resp. at 8. Plaintiff offers no argument to the contrary, but rather argues as follows:

> The ability to reach overhead and the ability to reach at or above shoulder level are different degrees of limitations, and the ALJ's failure to accurately present the degree of Plaintiff's limitations renders the *Step Five* finding unsupported. It cannot be ascertained from the record whether the inability to ever reach at or above should level with the left upper extremity *would limit or preclude the ability to sustain jobs existing in significant numbers in the national economy*.

Br. at 9 (emphasis added). Plaintiff overlooks that the ALJ only addressed step five as an alternative to her step four conclusion. The ALJ concluded that Plaintiff was not disabled at step four, not step five, because Plaintiff could perform her past relevant work as a companion regardless of her ability to perform other jobs in the national economy. AR 32. Plaintiff's argument is non-responsive to this conclusion as she only addresses the impact of her reaching limitation on her ability to perform other jobs, not on her ability to perform her past relevant work as a companion.

### B. Discounting Plaintiff's Subjective Symptoms

#### 1. Applicable Law

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must articulate clear and convincing reasons before rejecting Plaintiff's testimony. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." S.S.R. 16-3p at *10.

#### 2. Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 21. Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms

11

*Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ did so finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

First, the ALJ discussed Plaintiff's allegedly debilitating back pain. She noted that, despite exhibiting tenderness to palpitation during physical examination, Plaintiff sat comfortably in the examination chair, got on and off the table without difficulty, demonstrated a normal gait, and ambulated without assistive devices. AR 28. The ALJ further noted that the Plaintiff's allegedly disabling symptoms were undermined by the conservative nature of her treatment which consisted only of physical therapy, chiropractic adjustments, and Tylenol with codeine. AR 29. Plaintiff did not undergo more aggressive treatment, such as surgery. AR 30. The ALJ also discussed Plaintiff's allegedly debilitating shoulder pain. She noted that, despite diagnoses of adhesive capsulitis and tendinitis, physical examination revealed five out of five motor strength in both upper extremities, and Plaintiff's treating provider indicated that her symptoms are mild, non-severe, and do not interfere with activities of daily living. AR 30. The ALJ also discussed Plaintiff's daily activities. She noted that, despite some functional deficits, Plaintiff engaged in a somewhat normal level of daily activity including meal preparation, driving herself, going for regular walks, caring for her dogs, performing light household chores, and tending to hygiene. AR 30.

Plaintiff contends the ALJ erred in finding that her daily activities undermine her alleged symptoms because, according to Plaintiff, her daily activities "do[] not correlate to job activities." Br. at 11 (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that the ALJ may rely on Plaintiff's daily activities to support an adverse credibility determination when those activities (1) "contradict [the claimant's] other testimony," or (2) "meet the threshold for transferable work skills."). In *Orn*, however, the Ninth Circuit's holding was predicated on the fact that the plaintiff's daily activities of "read[ing], watch[ing] television and color[ing] in coloring books" amounted to "activities so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639. Here, by contrast, Plaintiff's daily activities went decidedly beyond "read[ing], watch[ing] television and color[ing]." *Id.*

Moreover, as noted by Defendant, even Plaintiff's fairly undemanding activities of meal preparation, driving, and attending appointments are indeed many of the same activities performed

12

by a companion according to Plaintiff and the DOT's descriptions of the job. *See* AR 61–63 (in which Plaintiff identified her previous job responsibilities as a companion, including meal preparation, laundry, and accompanying the patient to doctor's appointment); DOT309.677-010 (identifying a companion's job activities, including: attending to personal needs, conducting social or business affairs, reading aloud, playing cards, preparing meals, and accompanying the employer on outings.). Thus, the record reflects that Plaintiff performs many of the same daily activities for herself that she previously performed for others in her companion role.

Plaintiff also argues that the ALJ erroneously found her treatment conservative while "fail[ing] to address that Plaintiff could not undergo a number of treatment modalities due to her kidney condition." Br. at 11. Indeed, the ALJ noted that Plaintiff received no injections (AR 29), while overlooking that injections were in fact recommended by Dr. Lester but were precluded due to her nephrotic syndrome. *See* AR 388 ("I should think that this would be treated with cortisone injections . . . however, the patient has had nephrotic syndrome . . . "). Conceding for the moment that the ALJ erred here, it was nonetheless harmless because she identified other clear and convincing reasons for rejecting Plaintiff's subjective complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."). As explained above, lack of injections was not the sole basis for the ALJ's conclusion that Plaintiff's treatment was conservative, and Plaintiff's conservative treatment was not the sole basis for the ALJ's conclusion that Plaintiff's complaints were not credible. AR 30.

Lastly, Plaintiff contends that the opinion of her treating physician, Dr. Cordoba, supports her alleged limitations and further bolsters her credibility insofar as he opined that she could only stand, walk, or sit for 20-30 minutes. Br. at 11–12. Dr. Cordoba's medical source statement is unsigned, undated, and largely incomplete. AR 415-416. Some sections are entirely blank while others contain confusing responses. For instance, in response to the lift/carry question, Dr. Cordoba hand wrote in the margin "she can't elevate a glass of water . . ." which Dr. Cordoba wrote in quotation marks followed by ellipses, making it unclear whether he is expressing that opinion or if

13

he is just reciting what Plaintiff reported to him.  Finally, in lieu of a signature, Dr. Cordoba wrote "needs special evaluation" in the signature block.  AR 416.  This medical source statement does not undermine the reasons the ALJ articulate for rejecting Plaintiff's subjective complaints.

### C. Adjudication by Improperly Appointed ALJ

Finally, Plaintiff argues that the ALJ was unconstitutionally appointed warranting remand for consideration of her claim by a new properly appointed ALJ.  Plaintiff relies on *Lucia*, in which the Supreme Court held that, under the Appointments Clause, "only the President, a court of Law, or a head of a department" can appoint officers.  Br. at 12 (quoting *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018)).  When *Lucia* was decided on June 21, 2018, Plaintiff's SSI application was pending.  The ALJ had conducted the hearing but had not rendered a decision.  Although *Lucia* did not address appointment of Social Security ALJs, on July 16, 2018 the Commissioner of the SSA responded to the ruling by ratifying the appointments of ALJs and administrative appeals judges to address any prospective Appointments Clause concerns.  *See* "Emergency Message EM-18003 REV 2", available at https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM (last visited November 23, 2020).

Plaintiff argues the ALJ was unconstitutionally appointed when she presided over her hearing in May 2018, and the matter should be remanded for a new hearing before a properly appointed ALJ.  The Ninth Circuit has not considered the application of *Lucia* to Appointments Clause challenges in the Social Security context.  To the extent *Lucia* does apply to the Social Security ALJs, courts within this Circuit (including this court, and the undersigned) hold that such a challenge must be preserved at the administrative level.  *See, e.g.*, *McElfresh v. Comm'r of Soc. Sec.*, No. 1:19-CV-0823 JLT, 2020 WL 5604274, at *1 (E.D. Cal. Sept. 18, 2020) *Erb v. Saul,* No. 1:18-CV-01398-GSA, 2019 WL 6683134, at *11 (E.D. Cal. Dec. 6, 2019); *Byrd v. Berryhill*, No. 1:17-cv-01619-SKO, 2019 WL 95461 at * 6, n. 10 (E.D. Cal. Jan. 03, 2019).  Plaintiff identifies no precedent to the contrary, nor does she contend that she raised this challenge before the agency.

### VIII. Conclusion and Order

Based on the foregoing, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff is not disabled.  Accordingly, Plaintiff's appeal from the

administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Esperanza Arreguin.

IT IS SO ORDERED.

Dated:     **November 25, 2020**                              **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE